UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WINNIE PETERS                                                    CIVIL ACTION

versus                                                          No.  04-2586

HARRAH'S NEW ORLEANS, et al.                                    SECTION: I/4

<u>ORDER AND REASONS</u>

Before the Court is the motion for summary judgment filed by defendant Jazz Casino

Company, L.L.C. ("Harrah's").[1]  Plaintiff, Winnie Peters, opposes the motion.[2]  For the

following reasons, defendant's motion is **GRANTED**.

*BACKGROUND*

Plaintiff was hired by Harrah's in November, 1999, as a customer Safety Officer; in July,

2000, she was promoted to the position of customer safety dispatcher.[3]  As a dispatcher, plaintiff

was responsible for monitoring video surveillance and telephone lines inside a Harrah's control

room.  She also coordinated the work of customer safety officers.[4]

Plaintiff received several disciplinary warnings while working at Harrah's from early

---

[1]Rec. Doc. No. 27.

[2]Rec. Doc. No. 36.

[3]Rec. Doc. No. 36, p. 1.

[4]Rec. Doc. No. 27, p. 2.

1

2000 until 2002.  She received informal verbal warnings, or "coachings," for excessive absenteeism,[5] for talking to another co-worker instead of supervising the removal of money from a machine,[6] and for making personal calls using a supervisor's telephone access number.[7]  On November 27, 2000, plaintiff received a written warning for tardiness and absenteeism.[8]  In December, 2001, plaintiff was suspended for disclosing confidential information to another employee regarding an on-going investigation.[9]  Plaintiff was later given a written warning for this infraction, though she claimed not to have disclosed any information.[10]

Plaintiff alleges that in September, 2002, she was sexually harassed by Ervin Carr, the assistant director of customer safety and transportation.[11]  In October, 2002, another Harrah's employee reported this alleged harassment to a customer service manager on behalf of plaintiff. Harrah's contends that it conducted an internal investigation and found plaintiff's complaint to be unsubstantiated.[12]

Plaintiff states that, after this complaint, Carr began retaliating against her for reporting his allegedly harassing conduct.  Plaintiff describes a "campaign of harassment" in which Carr

---

[5]Rec. Doc. No. 27, Def.'s Ex. A-1.

[6]Rec. Doc. No. 27, Def.'s Ex. A-2.

[7]Rec. Doc. No. 27, Def.'s Ex. A-3.

[8]Rec. Doc. No. 27, Def.'s Ex. A-4.

[9]Rec. Doc. No. 27, Def.'s Ex. A-5.

[10]Rec. Doc. No. 27, Def.'s Ex. A-6.

[11]Rec. Doc. No. 36, pp. 2-3.

[12]Rec. Doc. No. 27, p. 2 n.1.

2

instructed other employees to report plaintiff for violations of company policy, including insubordination.[13]  Plaintiff received several warnings for having her purse in the control room, for having food in the control room, for improperly displaying her identification badge, for wearing earrings that were too large, and for not following company procedures regarding cash and lost and found items.[14]  Plaintiff states that other employees were not disciplined for similar behavior.  Plaintiff also alleges that her requests to transfer out of the customer safety and transportation department were ignored.

On September 5, 2003, plaintiff was given a written warning by Patrick Briscoe, another Harrah's supervisor, for using company phones to make extended personal calls.  Because of this and previous warnings, Briscoe recommended to David Pipkin, the director supervising plaintiff, that she be terminated.[15]  Pipkin reviewed Briscoe's recommendation and terminated plaintiff.

In response to her termination, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), arguing that she was discharged in retaliation for her sexual harassment complaint.[16]  On June 16, 2004, the EEOC closed plaintiff's case, concluding that it could not determine that there had been a violation of the statutes within its purview.[17]  On September 17, 2004, plaintiff filed her complaint in federal court.[18]  During the

---

[13]Rec. Doc. No. 36, p. 3.

[14]Rec. Doc. No. 36, pp. 4-6.

[15]Rec. Doc. No. 27, pp. 5-6.

[16]Rec. Doc. No. 27, p. 6.

[17]Rec. Doc. No. 27, Pl.'s Ex. A-16.

[18]Rec. Doc. No. 1.

course of subsequent litigation, several parties and claims were dismissed, leaving only plaintiff's retaliation claim against defendant.[19]  Defendant filed the instant motion on August 23, 2005.


## LAW AND ANALYSIS

### I.  Standard of Law

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106

---

[19]*See* Rec. Doc. No. 7 (granting defendant's unopposed motion to dismiss state law claims and claims against Carr); Rec. Doc. No. 10 (granting plaintiff's motion to dismiss parties); Rec. Doc. No. 17 (dismissing, with consent of the parties, all claims against defendant with the exception of plaintiff's retaliation claim).

S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied

by creating some metaphysical doubt as to the material facts by conclusory allegations,

unsubstantiated assertions, or by only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d

1069, 1075 (5th Cir. 1994) (internal citations omitted).  Instead, a genuine issue of material fact

exists when the "evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.

Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not

rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The

non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be

drawn in [that party's] favor."  *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52,

143 L. Ed. 2d 731, 741 (1999) (internal quotation and citation omitted) (alternation in original).


## II.  *Plaintiff's Claim of Retaliation Pursuant to Title VII*

Plaintiff's complaint charges that Harrah's unlawfully retaliated against her for reporting

Carr's sexual harassment and discrimination.[20]  Title 42, United States Code, Section 2000e-3(a)

provides:

> It shall be an unlawful employment practice for an employer to discriminate against
> any of his employees . . . because he has opposed any practice made an unlawful
> employment practice by this title, or because he has made a charge, testified,
> assisted, or participated in any manner in an investigation, proceeding, or hearing
> under this title.

A retaliation claim requires plaintiff to first make a prima facie showing that:  1) she

---

[20]Rec. Doc. No. 1 ¶¶ 30, 31.

5

engaged in a statutorily protected activity or expression; 2) an adverse employment action

occurred; and 3) a causal link between the protected activity or expression and the adverse

employment action exists.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir.

2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) and

*Foley v. Univ. of Houston Sys.*, 324 F.3d 310, 316 (5th Cir. 2003) (holding that the elements for

establishing a prima face case of retaliation under § 1981 are identical to those that must be

established under Title VII)); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir.

2001) (stating "[r]etaliation claims are nothing more than a protection against discrimination in

that the employee against whom the employer has retaliated suffers discrimination based on the

employee's exercise of a right to charge, testify, assist, or participate in a protected activity under

the ADEA"); *see also Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136

(5th Cir. 1982).  Having established a prima facie case, the burden then shifts to the employer to

demonstrate a legitimate, non-discriminatory purpose for the employment action.  *Aldrup v.

Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).  If the defendant satisfies this burden, the plaintiff

must then prove that the employer's proffered non-discriminatory purpose for the action is

merely pretextual.  *Id.*

The ultimate determination in a retaliation case is whether the plaintiff's protected

conduct was a but-for cause of the termination. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d

1340, 1346 (5th Cir. 1985). The causal connection standard of a prima facie retaliation case,

however, is much less stringent than the ultimate but-for cause determination in such a case.

*Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). With respect to plaintiff's prima

facie case, plaintiff need not prove that retaliation was the sole factor motivating the termination

decision.  *Id.*

Defendant concedes that by reporting Carr's alleged sexual harassment and discrimination, plaintiff engaged in a protected activity that satisfies the first element of the prima facie case.[21]  Defendant first argues that plaintiff has not alleged facts sufficient to establish the "adverse employment action" element of the prima facie case for retaliation with respect to some of her allegations.[22]  Defendant contends that the written warnings that plaintiff received do not rise to the level of adverse employment actions.

*A.  Adverse Employment Action*

"[O]nly ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating satisfy the adverse employment action element of a prima facie case of retaliation."  *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001) (quoting *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995)) (internal quotations omitted).  Title VII was not intended to "address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."  *Dollis*, 77 F.3d at 781-82.  "Interlocutory . . . decisions which can lead to an ultimate decision are insufficient to support a prima facie case of retaliation."  *Fierros*, 274 F.3d at 191 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997)) (internal quotations omitted).  An adverse employment action must "have more than a tangential effect on a possible future ultimate employment decision."  *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (internal quotation and

---

[21]Rec. Doc. No. 27, p. 10.

[22]Rec. Doc. No. 27, pp. 9-10.

citation omitted).  This restriction on the interpretation of adverse employment actions is necessary because, as the *Mattern* court explained, "[t]o hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee--anything which might jeopardize employment in the future.  Such expansion is unwarranted."  104 F.3d at 708.

Plaintiff claims that the court's decision in *Fierros* somehow expanded the scope of adverse employment actions because of its reliance on the United States Supreme Court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 136 L. Ed. 2d 808, 117 S. Ct. 843 (1997), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998).[23]  The *Fierros* court, however, specifically declined to decide whether "the 'ultimate employment decision' doctrine is undermined by the Supreme Court's recent Title VII decisions."  274 F.3d at 192.  *See also Watts v. Kroger Co.*, 170 F.3d 505, 510 n.4 (5th Cir. 1999) (declining to reach the issue).

Despite her allegations that the written warnings she received were part of a larger retaliatory scheme against her, plaintiff has not presented evidence to suggest that these warnings were ultimate employment decisions, not merely unactionable disciplinary filings.  The Court finds that these actions cannot sustain the prima facie case for her retaliation claim.  Defendant concedes, however, that plaintiff's discharge from her employment does constitute an adverse employment action.[24]  Therefore, with respect to plaintiff's argument that she was discharged because of her sexual harassment complaint, her claim survives.

---

[23]Rec. Doc. No. 36, pp. 11-12.

[24]Rec. Doc. No. 27, p. 11.

B.  *Causal Link*

Defendant next argues that plaintiff cannot show the requisite causal link between her sexual harassment complaint and her subsequent discharge.[25]  Defendant contends that neither Briscoe nor Pipkin, the supervisors involved in terminating plaintiff, were aware of plaintiff's prior sexual harassment claim.[26]  Defendant also points to the length of time between plaintiff's sexual harassment claim and her ultimate discharge, arguing that this 11-month gap further belies plaintiff's claim that these events are casually related

As stated above, the causal link between a protected activity and an adverse employment action need not rise to a "but for" level.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Long*, 88 F.3d at 305 n.4.  In determining causality between the protected activity and the subsequent adverse employment, however, a court must focus on the final decisionmaker.  *Id.* at 346.  Where this final decisionmaker "serves as the 'cat's paw' of those who were acting with retaliatory motives, the causal link between the protected activity and adverse employment action remains intact."  *Id.; see also Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990), *quoted in Long v. Eastfield Coll.*, 88 F.3d 300, 307 (5th Cir. 1996).  If supervisory employees influence the actions of the final decisionmaker, their discriminatory animus may be imputed to the final decisionmaker.  *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)).  In order to show causality pursuant to this "cat's paw" analysis, plaintiff must "establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the *same* co-worker possessed

---

[25]Rec. Doc. No. 27, pp. 11-12.

[26]Rec. Doc. No. 27, pp. 12-13.

leverage, or exerted influence, over the titular decisionmaker." *Id.* (internal quotations and citations omitted) (emphasis added).

Plaintiff includes numerous allegations in her memorandum regarding this prong of the prima facie case.  Few, however, have any bearing on the remaining issue of the causal connection between her protected activity and subsequent discharge.[27]  Plaintiff contends that, because of his supervisory position, Pipkin would have been aware of her prior protected activity.[28]  Further, she alleges that her antagonizer, Carr, had some influence on Pipkin, the final decisionmaker.[29]

Plaintiff's first allegation against Pipkin does not require the application of the "cat's paw" analysis.  Plaintiff has not offered anything more than an unsupported, conclusory allegation to suggest that Pipkin's decision to discharge her was related to her protected activity. Plaintiff speculates that Pipkin would have consulted other employees or her personnel file before making the decision to terminate her and, as a result, he would have learned of her prior sexual harassment complaint.[30]  This speculation, however, does not create a genuine  issue of material fact, particularly in light of Pipkin's sworn affidavit that he had no prior knowledge of

---

[27]Rec. Doc. No. 27, p. 13.

[28]Rec. Doc. No. 36, pp. 19-20.

[29]Rec. Doc. No. 36, pp. 18-21.

[30]Rec. Doc. No. 36, pp. 19-20 ("[I]t defies belief that Pipkin would make the decision to terminate a long time employee without ever having consulted other employees who had supervised plaintiff and/or without reviewing plaintiff's personnel file, which was filled with documents reflecting her complaint of sexual harassment against Carr.").

plaintiff's sexual harassment complaint.[31]

Plaintiff's next argument that Pipkin's decision was actually the result of influence from Carr and Briscoe likewise fails. Plaintiff has not demonstrated that either Carr or Briscoe influenced Pipkin's final decision in a discriminatory manner sufficient to meet both requirements of the "cat's paw" analysis.

Plaintiff alleges that Briscoe, who recommended to Pipkin that plaintiff be discharged, was influenced by Carr. Plaintiff notes that Carr was Briscoe's immediate supervisor[32] and that Briscoe made comments reflecting a discriminatory attitude toward plaintiff[33]. Though Briscoe admits he recommended to Pipkin that plaintiff be fired, he denies that Carr had any influence over his decision to recommend plaintiff for discharge or that he had any knowledge of plaintiff's prior sexual harassment complaint.[34] Plaintiff has not shown that Briscoe exhibited any discriminatory animus toward her. While the comments related by Dupas suggest some negative sentiment, plaintiff does not show that these comments were motivated by a discriminatory attitude connected to plaintiff's report of sexual harassment as imagined by the

_____

[31]Rec. Doc. No. 27, Def.'s Ex. C, p. 2. In defendant's reply memorandum, Harrah's also notes that any records of plaintiff's sexual harassment complaint would not have been kept in her personnel file, but in a separate, employee relations file. Rec. Doc. No. 40, p. 8. Additionally, Pipkin testified that he did not review plaintiff's employee relations file at the time of his decision to terminate plaintiff. Rec. Doc. No. 40, Def.'s Ex. B, p. 2.

[32]Rec. Doc. No. 36, p. 19.

[33]Rec. Doc. No. 36, p. 20. Plaintiff cites the deposition of Dameia D. Dupas, a customer safety officer at Harrah's. Rec. Doc. No. 36, Pl.'s Ex. B. Dupas testified that Briscoe exclaimed, "They got her. We finally got her," when plaintiff was warned for violating a policy regarding telephone use. Rec. Doc. No. 36, Pl.'s Ex. B, pp. 32-33. Dupas described Briscoe's mood as "ecstatic."

[34]Rec. Doc. No. 27, Def.'s Ex. B, Aff. of Briscoe at 2.

"cat's paw" analysis.  This conclusion is bolstered by Briscoe's sworn affidavit denying any knowledge of plaintiff's prior claim.  Plaintiff's sole argument to contradict Briscoe's denial is that, because Carr was Briscoe's supervisor, Briscoe must have had knowledge of plaintiff's sexual harassment complaint.[35]  This unsupported allegation, though, is not enough to create a genuine issue of material fact.

In addition, plaintiff has not shown that Carr had any influence or leverage over Pipkin and his final decision.  She does not detail any connection between the two employees beyond her allegation that Carr influenced Briscoe, who subsequently made the recommendation to Pipkin. This connection, however, is too attenuated to suffice for the "cat's paw" analysis, which requires plaintiff to prove that the same co-worker who exhibited discriminatory animus be the one who also possessed influence or leverage over the final decisionmaker.  *Roberson*, 373 F.3d at 653.

Without this evidence, plaintiff has not shown that Pipkin was a "cat's paw" of those employees at Harrah's who were acting with discriminatory motive.  Because plaintiff has not created a genuine issue of material fact as to the causation element of her prima facie case, her Title VII claim must fail.[36]

---

[35]Rec. Doc. No. 36, p. 19.

[36]Having determined that plaintiff cannot meet the third element of the prima facie case, the Court finds no need to continue the Title VII analysis and inquire into defendant's non-discriminatory reason for the termination or any argument by plaintiff as to why this reason may be pretextual.

*III.  Plaintiff's Claim of Retaliation Pursuant to State Law*

Plaintiff's complaint also avers that Harrah's alleged retaliation violated Louisiana Revised Statutes Section 23:301 et seq.[37]  Neither party, however, addresses this state law claim in their respective briefs.  Louisiana courts apply a burden-shifting analysis in retaliation claims that is analogous to the federal analysis.  *See Rambo v. Willis-Knighton Med. Ctr.*, 793 So. 2d 254, 258-59 (La. App. 2d Cir. 2001); *see also Spears v. Rountree Oldsmobile-Cadillac Co.*, 653 So. 2d 182 (La. App. 2d Cir. 1995) ("Louisiana's anti-discrimination law . . . is substantively similar to the federal statute prohibiting sex discrimination in Title VII of the Civil Rights Act of 1964, as amended. . . . It is thus appropriate to consider interpretations of the federal statute.") (citations omitted).  Because of the similarity between the federal and state law approaches to such retaliation claims, the Court finds no reason to conduct a second inquiry into plaintiff's claim pursuant to Louisiana law.

Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** and plaintiff's claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February __23rd__, 2006.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[37]Rec. Doc. No. 1, p. 8, ¶ 31.

13